# Wheeling.

## THE STATE v. LUSK.

Decided June 30, 1880.

(Absent, MOORE, JUDGE).

An indictment under section seven of chapter one hundred and forty seven of Code of West Virginia, page six hundred and eighty eight, for an offer to bribe an arbitrator was on demurrer held by this Court to be sufficient. See for a copy of the indictment the statement of the case.

Writ of error to a judgment of the circuit court of the county of Wyoming, rendered on the 7th day of May, 1879, in a criminal action for misdemeanor, wherein Boyd E. Lusk was defendant, allowed upon the petition of said Lusk.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

The grand jury of Wyoming county on October 17, 1876, found against Boyd E. Lusk the following indictment:

" STATE OF WEST VIRGINIA, WYOMING CO., TO WIT:

" In the Circuit Court of said County.

" The jurors of the State of West Virginia in and for the body of the county of Wyoming, and now attending the said court, upon their oath present that on the 28th

day of January, in the year 1876, a certain cause in which Boyd E. Lusk was plaintiff and Drury Halsey was defendant, was pending and undetermined in the county court of said county, and that at the January term of said court, on the 28th day of January, 1876, by agreement of parties, the matters in controversy in said cause were submitted to the arbitration and award of Martin G. Clay, Henry Ellis and Smith Trent, selected and chosen by the parties, and duly qualified according to law to act as such arbitrators ; and that on the 29th day of January, 1876, while the said matters of controversy in said cause were before the said arbitrators, the said Boyd E. Lusk, in the said county, with the intent to bias the opinion and influence the decision of the said Martin G. Clay, one of the said arbitrators to whom was submitted the matters in controversy in said cause, pending as aforesaid, did then and there unlawfully, wilfully and corruptly, promise to give, and offer to pay, to him, the said Martin G. Clay as such arbitrator as aforesaid, a certain sum of money, to-wit, the sum of five dollars, as a pecuniary reward to influence and induce him, the said Martin G. Clay, as such arbitrator as aforesaid, to prostitute and betray the duties devolving on him as such arbitrator as aforesaid, by giving his opinion and deciding the said matters in controversy in said cause then pending before said arbitrators as aforesaid, in favor of the said Boyd E. Lusk, against the peace and dignity of the State. Upon the evidence of Martin G. Clay, sworn in open court to give testimony before the grand jury."

The defendant by his counsel moved to quash this indictment, which motion the court overruled. The defendant then demurred to the indictment, and the court overruled his demurrer, and he pleaded not guilty, and issue was joined. The jury found the defendant guilty and assessed his fine at $1.00. He then moved the court, by his attorney, to set aside this verdict and grant him a new trial, and also moved the court to arrest the judg-

ment, both of which motions the Court overruled. The court afterwards rendered a judgment for the said fine of $1.00 and for costs against the defendant in favor of the State, and that the defendant be confined in the jail of Wyoming county for six months. To this judgment of the court the defendant excepted; and the execution thereof was suspended for sixty days to allow the defendant an opportunity to obtain a writ of error on the defendant entering into a proper recognizance, which was done; and a writ of error was awarded.

*David E. Johnston*, for plaintiff in error, relied on the following authorities:

Whart. Am. Cr. L. §§ 285, 287; Code ch. 108, § 1; 5 Leigh 763; 2 Whart. Am. Cr. L. § 272; 3 Mo. 45; Whart. Prec. § 1015; 2 Whart. Cr. L. § 525.

*The Attorney General, Robert White*, for the State :

The indictment under the statute, Code of W. Va., ch. 147, § 7, is not bad on demurrer.

The general rule as to indictments laid down by this Court may be found in case of *State* v. *Williams*, 14 W. Va. 868.

1st. Then there is no question but that the indictment shows it was found by competent authority.

2d. The indictment substantially alleges that the defendant did promise to give money to an arbitrator with intent to bias his opinion and influence his decision, and therefore charges the crime made by the statute.

3d. Such an act so done is a crime.

A controversy may be ended, whether there be a suit or not, by arbitration, and the parties may agree or not to enter the submission to record. Code, ch. 108, § 1.

Submission may be by *parol,* or by *deed,* or by rule of court. If by parol, assumpsit will lie; if by deed covenant will lie. 2 Greenl. Ev. § 69; 1 Wash. 156, 290; 3 Leigh 700; 6 *Id.* 62; 7 *Id.* 231; 8 *Id.* 608; 1 Rob. (old) Pr.

97

The persons selected by parol, or by deed, or by the submission are *arbitrators* within the meaning of this statute.

The indictment charges that there was a "controversy," that certain parties were selected by the parties to whom the "controversy" was submitted for arbitration, that Clay was one of them and that the defendant did promise money to Clay, one of said arbitrators, with intent to bias his opinion and influence his decision as such. The indictment is substantially good under the statute.

GREEN, PRESIDENT, delivered the opinion of the Court:

The only error assigned in this case is, that the indictment was fatally defective. It is objected to the indictment, that it fails to allege that the arbitrators were appointed by an order of the court, or that the court had any jurisdiction in that case. The counsel of the plaintiff in error insists, "that, before there could be a legal submission to arbitration, there must have been a pending cause in court and a rule of the court entered of record; and that without such submission and rule of the court entered of record the arbitrators were without authority in law to act; and indeed were not arbitrators at all;" and that the indictment failing to state those necessary facts is fatally defective. To sustain this position he refers to the opinion of Judge Tucker in *Bierly* v. *Williams*, 5 Leigh 763.

Judge Tucker is entirely misapprehended by the counsel. He does say : "It may be safely affirmed that no award can be good without a verbal submission. The submission is the foundation of this authority, and from it springs all the respect and sanctity, which has justly been paid to the judgment of this tribunal selected by the parties themselves. Take away the submission, and the arbitrators are without authority, and their award is a void and inefficacious act. And this is equally the case, whether there has never been the semblance of a

submission, or that submission has been null and void for whatever cause; whether for infancy coverture or *fraud.*" The counsel for the plaintiff in error seems to have inferred that by a submission Judge Tucker meant an order of a court in a pending suit submitting the matters in controversy to arbitrators. This is clearly a misapprehension. By the submission the judge meant the agreement of the parties to arbitrate; and this submission could be shown by an order of the court or by proving an agreement out of court, even though no suit was pending. It might be evidenced by an order of record, or it might be shown by the production of a written agreement, or even by proving a parol agreement. All he means to say is, that to make the award valid, this submission or agreement to submit however proven must be valid, and must not be vitiated by fraud. In that very case the agreement to submit to arbitrators was a parol agreement, and no suit was pending, yet it was not pretended that this affected the validity of the award. The question before the court was, whether in a court of law its validity could be affected by *fraud* in the agreement to submit the matter to arbitration; and it was held that it could.

It is obvious from the very face of our statute, that a submission to arbitrators may be made by the agreement of parties to any controversy, though no suit be pending, and though no entry of the submission be made of record; and that when an award has been so made, it may nevertheless be entered up as the judgment of the court, if it had been so agreed. See Code of W. Va. ch. 108, §§1, 2, 3, p. 569. The first section says expressly, that "persons desiring to end any controversy, whether there be a suit pending therefor or not, may submit the same to arbitrators." And the third section says: "Upon the return of any such award made under such an agreement (whether any previous record of the submission has been made or not), it shall be entered up as a judgment or decree of the court."

It was therefore unnecessary for the indictment to allege, that a suit was pending in the county court of Wyoming, when the parties agreed to submit the matters in controversy between them to arbitrators; and the failure therefore to allege that this court had jurisdiction of such suit could not vitiate the indictment; nor does the failure to allege that it was submitted by an order of record, for it could be just as well submitted by the agreement of the parties, as the indictment alleges, without any entry of record.

But it is claimed by the counsel of the plaintiff in error that the allegation in the indictment, "that the matters in controversy in this suit were submitted by the agreement of the parties to the arbitration and award of Martin G. Clay, Henry Ellis and Smith Trent, selected and chosen by the parties, and duly qualified according to law to act as such arbitrators," is so vague and uncertain as to vitiate this indictment. It is said, that from this it does not appear that anything was in controversy; and it is suggested, that from all that does appear the matter in controversy might have been a public office, and that no submission of such controversy could be valid. If, as suggested, the understanding between the parties had been to submit a controversy concerning a public office, such as a seat in Congress, to arbitration, such understanding would not be an agreement; for to constitute an agreement the parties to it must agree with reference to some subject matter, about which they have a legal right to agree. When therefore the indictment alleges, that "by an agreement of parties the matters in controversy in said cause were submitted to arbitration;" it in effect alleges, that the subjects of controversy were legally capable of being included in such an agreement. This is necessarily implied in the allegation, that "the parties agreed." It is also implied in the allegation, that the arbitrators were "duly qualified according to law to act as such arbitrators." As then the allegation in the indictment is equivalent

to alleging that the agreement, entered into by the parties, was a valid and binding legal agreement to submit to arbitration matters of controversy, which they had a right to submit, it was unnecessary further to specify the character of these subjects of controversy, or the amount involved, for these were matters totally immaterial. All that was necessary to allege was, that the matters in controversy were agreed to be submitted to arbitration ; and this was done. This allegation of this agreement necessarily implied that there was some subject of controversy, which they could legally submit, and that it was submitted ; and no greater degree of accuracy is necessary.

The counsel for plaintiff in error further objects, that the indictment is fatally defective in describing the offence for which the prisoner was indicted. The indictment is based on the seventh section of chapter one hundred and forty-seven of the Code of West Virginia page six hundred and eighty-eight, which, so far as it is applicable to this case, is as follows : "Any person, who offers or promises to give any money to an arbitrator with intent to bias his opinion or influence his decision in relation to any matter, in which he is acting, or is to act, shall be confined in jail six months, and fined not exceeding five hundred dollars." The language used in the indictment in describing the offence is, "that on the 29th day of January, 1876, while the matters in controversy in said cause were before the said arbitrators, the said Boyd E. Lusk, in the said county, with the intent to bias the opinion and influence the decision of the said Martin G. Clay, one of said arbitrators to whom was submitted the matters in controversy in said cause, pending as aforesaid, did then and there unlawfully, wilfully and corruptly promise to give and offer to pay to him, the said Martin G. Clay, as such arbitrator, a certain sum of money, to wit, the sum of $5.00, as a pecuniary reward to influence and induce him, the said Martin G. Clay as such arbitrator as aforesaid, to prostitute and

betray the duties devolving on him, as such arbitrator as aforesaid, by giving his opinion and deciding said matters in controversy in said cause then pending before said arbitrators as aforesaid in favor of the said Boyd E. Lusk, against the peace and dignity of the State."

There is doubtless in this description of the offence as well as in the balance of this indictment a good deal of surplusage; but it and the balance of the indictment seem to me to have in them a sufficiently clear and explicit allegation of every material fact necessary to constitute the offence described in said statute. It is said the indictment does not show that the arbitrators had accepted these trust. It expressly alleges, that this offer to bribe was made "on the 26th day of January, 1876, while the said matters in controversy were before the said arbitrators." Under the wording of the statute this is sufficient. It is not necessary that the arbitrator should be actually "acting"; it is sufficient that he "is to act." That the arbitrator had, when this bribe was offered, actually accepted the trust, appears from the allegation, that on January 25, 1876, the day before this bribe was offered, "he had duly qualified according to law to act as such arbitrator." The knowledge of these facts on the part of the defendant, when he offered this bribe, is shown by the allegation in the indictment, that he himself the day before appointed this arbitrator, the indictment saying they were "selected and chosen by the parties to said suit," and the defendant was a party to this suit. His knowledge of the acceptance of the position by this arbitrator is alleged, when it is said, he "unlawfully wilfully, and corruptly promised to pay him as such arbitrator."

The intent with which this bribe was offered is claimed to be too vaguely alleged to render this indictment good. It might have been more distinctly averred. Its language is "with the intent to bias the opinion and influence the decision of the said Martin G. Clay, one of the said arbitrators." It does not expressly say "in relation

to any matter in which he was acting or was to act as such arbitrator." But this omission or indefiniteness is afterwards corrected, when the indictment says he offered to pay him $5.00 "to influence and induce him, the said Martin G. Clay, as such arbitrator as aforesaid by giving his opinion and deciding said matters in controversy in said cause then pending before said arbitrators as aforesaid in favor of the said Boyd E. Lusk." The intent with which this bribe is offered is here set forth with all and more than all the necessary particularity.

Lastly it is claimed, that the indictment is fatally defective, because it does say that on the 29th day of January, 1876, the defendant in said county did offer this bribe with the intent to bias, &c., yet it should have been distinctly alleged, that this intent was contemporaneous and identical in place with the offer; that is, the allegation should have been "with intent then and there to bias." This seems to me to be hypercritical. If the time and place where and when an act is done is distinctly alleged, and it said that the act done at this time and place was done with a certain unlawful intent, it seems an unavoidable conclusion, that this was the intent at the moment the act was done, and that the repetition of the words "then and there" after the word "intent" in an indictment was unnecessary. I know it is frequently done, as for instance in the indictment in the case of *State* v. *Newsom,* 13 W. Va. p. 860, the words "then and there" are inserted after the word "intent." But on the contrary indictments are frequently in this respect worded similarly to the indictment in this case; and the words "then and there" are not inserted after the allegation of the intent. I know no case in which such omission has been held to be fatal. In the *State of West Virginia* v. *Hurst,* 11 W. Va. 55; and in *State* v. *Betsall,* 11 W. Va. 705, the words "then and there" are not inserted after the word "intent" in the indictments, and yet they were held good by this court.

I have considered all the objections urged by the ap-

pellant's counsel to this indictment; and I do not find that any of them are fatal to its validity. I have not myself found any other defect in this indictment, which I regard as so vital as to render it bad on demurrer or motion in arrest of judgment or as a sufficient reason for granting a new trial.

I am therefore of the opinion that the judgment of the circuit court of Wyoming county in this case must be affirmed, and the State of West Virginia, the defendant in error, must recover of Boyd E. Lusk the costs about this suit in this Court expended and $30.00 damages.

JUDGES HAYMOND AND JOHNSON CONCURRED.

JUDGMENT AFFIRMED.